IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**GEORGE BLACK,**

    **Petitioner,**

    v.

**TERRY TIBBALS, WARDEN,
LONDON CORRECTIONAL
INSTITUTION,**

    **Respondent.**

                                                 Case No. 2:14-cv-02179
                                                 Judge Watson
                                                 Magistrate Judge King

## REPORT AND RECOMMENDATION

Petitioner, a state prisoner, brings this action for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  This matter is before the Court on the *Petition*, ECF No. 1, Respondent's *Return of Writ*, ECF No. 7, and the exhibits of the parties.  For the reasons that follow, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED.**

**Facts and Procedural History**

The Ohio Fourth District Court of Appeals summarized the facts and procedural history of the case as follows:

> Appellant Black was indicted by the Ross County grand jury for one count of Involuntary Manslaughter, in violation of R.C. 2903.04; one count of Felonious Assault, in violation of R.C. 2903.11; and one count of Failure to Stop After a Non–Public Road Accident, in violation of R.C. 4549.021. After a two-day jury trial, appellant was found guilty of all counts.
>
> By Judgment Entry of Sentence, the trial court found that the offenses of Involuntary Manslaughter and Felonious Assault were crimes of similar import, and thus should be merged for sentencing purposes. The trial court sentenced appellant to nine years in prison for Involuntary Manslaughter, and three years in prison for Failure to Stop After a Non–Public Road Accident. The sentences

for imprisonment were ordered to run consecutive to each other, for a cumulative sentence of twelve years.

Appellant's conviction and sentence arise from the tragic events that occurred in the early morning hours of January 13, 2011, at the Valley Bar in Bainbridge, Ohio.

On the night of January 12, 2011, appellant and his acquaintance Tim Keaton arrived at the Valley Bar. Also present among the patrons of the Valley Bar that evening was Bob Nibert. Mr. Nibert was accompanied by his friend Billy Self, his cousin Amanda McElwee, and her friend Jennifer.

During the course of the evening, appellant struck up a conversation with Jennifer, bought her a drink, and asked her out on a date.

In the early morning hours of January 13, 2011, the bartender, Melissa Cox, announced last call indicating that the bar was closing. At that time, appellant and Mr. Keaton exited the bar and retired to appellant's Chevrolet Silverado truck. Meanwhile, Mr. Nibert and Mr. Self stayed inside the bar and assisted bartender Cox with her closing duties. Instead of leaving the premises, however, appellant asked Mr. Keaton if he would go back into the bar to summons Jennifer, so that appellant could give her his telephone number.

From here, the parties' versions of the facts differ.

According to the state's witnesses, after being summoned by Mr. Keaton, Jennifer went outside with him to the parking lot where appellant's truck was parked. A short time later, Mr. Self walked out to the parking lot to start his car and observed appellant talking to Jennifer as she stood beside his truck. When Mr. Self was returning to the bar, Jennifer asked him if he would escort her back into the bar.

As Mr. Self escorted Jennifer back to the bar, an argument ensued between Mr. Self and Mr. Keaton. Mr. Keaton then jumped out of appellant's truck, came after Mr. Self, and stabbed him in the abdomen with a screwdriver. Mr. Self was able to fight back and subdue Mr. Keaton eventually forcing Mr. Keaton back into the passenger seat of appellant's truck. Meanwhile, during the commotion of the fight, bartender Cox, Mr. Nibert, and possibly others came out to intervene.

2

> As the individuals returned to the bar to tend to Mr. Self's wound, Mr. Nibert stayed outside, apparently telling appellant and Mr. Keaton that they needed to leave the premises. Appellant then allegedly backed up his truck several feet, turned his truck toward Mr. Nibert, accelerated quickly, and intentionally struck Mr. Nibert. The force of the impact severed Mr. Nibert's leg as appellant's truck crashed through a metal guardrail, wooden privacy fence, and into the bar's outdoor beer garden.
>
> After striking Mr. Nibert, appellant backed his truck up and left the Valley Bar. Appellant was later apprehended by sheriff's deputies on State Route 41 in Pike County, Ohio.
>
> After spending nearly three months in the hospital and undergoing numerous surgical procedures, including the amputation of his right leg, Mr. Nibert died on March 28, 2011. The coroner's report lists "[c]omplications of blunt force injuries of lower leg" as the immediate cause of death.
>
> Appellant's version of the facts is significantly different than the prosecution's case. According to appellant, when Mr. Keaton exited the bar (after having re-entered to summons Jennifer) he was being attacked by several individuals. Appellant testified that the individuals attempted to prevent Mr. Keaton from entering the truck and engaged in a tug-of-war with the truck door handle. Eventually, Mr. Keaton was able to enter the truck. The individuals allegedly threw a beer bottle into the truck during the struggle.
>
> Appellant further testified that he felt he was in danger, that the parking lot was a sheet of ice, and that he was merely trying to escape when he exited the parking lot. He said that en route to his home, he briefly exited the truck and noticed a small dent on the front fender; he immediately thought he may have hit the fence at the Valley Bar. He testified that he then returned to Bainbridge, but before reaching the bar, Mr. Keaton asked that he take him home. Appellant then returned Mr. Keaton to his residence and was allegedly on his way back to the bar when he was stopped by the sheriff. Appellant denies hitting Mr. Nibert, the metal guardrail, or the wooden privacy fence. He testified that when he was backing up to leave the Valley Bar he did drive over what he thought to be a pile of snow, pushed aside from plowing the parking area.

*State v. Black*, No. 12CA3327, 2013 WL 2295697, at *1-3 (Ohio App. 4th Dist. May 22, 2013)(footnotes omitted). Petitioner asserted the following claims on direct appeal:

3

> First Assignment of Error:
>
> THE COURT ERRED IN PERMITTING IMPROPER QUESTIONING DURING VOIR DIRE.
>
> Second Assignment of Error:
>
> APPELLANT'S CONVICTION MUST BE REVERSED DUE TO PROSECUTORIAL MISCONDUCT DURING VOIR DIRE.
>
> Third Assignment of Error:
>
> THE APPELLLANT WAS DENIED A FAIR TRIAL DUE TO THE INEFFECTIVENESS OF COUNSEL.
>
> Fourth Assignment of Error:
>
> THE TRIAL COURT ERRED IN FAILING TO GIVE AN INSTRUCTION ON SELF DEFENSE.
>
> Fifth Assignment of Error:
>
> THE TRIAL COURT SENTENCED THE APPELLANT TO CONSECUTIVE TERMS BASED UPON UNDUE CONSIDERATION OF ONLY ONE SENTENCING FACTOR.
>
> Sixth Assignment of Error:
>
> THE TRIAL COURT SENTENCED THE APPELLANT TO CONSECUTIVE TERMS BASED UPON IMPROPER AND UNCONSTITUTIONAL CRITERIA.
>
> Seventh Assignment of Error:
>
> CUMULATIVE ERRORS DEPRIVED THE APPELLANT OF A FAIR TRIAL.

*Id*. at \*1.  On May 22, 2013, the appellate court affirmed the jury's verdict, but reversed the trial court's Judgment Entry of Sentence, and remanded the case to the trial court. *Id*.  On November 6, 2013, the Ohio Supreme Court declined to accept jurisdiction of the appeal. *State v. Black*, 136 Ohio St.3d 1558 (Ohio 2013).  On April 14, 2014, the state court re-sentenced Petitioner to

an aggregate term of twelve years' incarceration plus five years' supervised release. Petitioner did not file an appeal.[1]

On November 4, 2014, Petitioner filed this action, alleging that he was denied a fair trial due to prosecutorial misconduct during *voir dire* (claim one) and that he was denied the effective assistance of counsel based on his attorney's failure to object to an improper *voir dire* (claim two). Respondent contends that these claims are either waived or fail to provide a basis for relief.

**Procedural Default**

In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state criminal defendant with federal constitutional claims is required to present those claims to the highest court of the state for consideration. 28 U.S.C. § 2254(b), (c). If the petitioner fails to do so, but the state still provides a remedy to pursue, his petition for federal habeas corpus relief is subject to dismissal for failure to exhaust state remedies. *Id.*; *Coleman v. Thompson*, 501 U.S. 722, 731 (1991); *Deitz v. Money*, 391 F.3d 804, 808 (6th Cir. 2004). If, because of a procedural default, the petitioner can no longer present the relevant claims to a state court, the petitioner also waives the claims for purposes of federal habeas review unless he can demonstrate cause for the procedural default and actual prejudice resulting from the alleged constitutional error. *Edwards v. Carpenter,* 529 U.S. 446, 451 (2000); *Coleman,* 501 U.S. at 724; *Murray v. Carrier,* 477 U.S. 478, 485 (1986).

---

[1] On December 14, 2012, through counsel, Petitioner filed a petition for post conviction relief alleging the denial of the effective assistance of counsel based on his attorney's failure to visit him in the jail or return phone calls; discuss a trial strategy; show Petitioner discovery material; prepare Petitioner to testify; and file a motion to suppress evidence. *Exhibits Attached to Return of Writ*, ECF 7-1, PageID# 206. It does not appear that the trial court issued a ruling on the petition; however, these allegations are not relevant to the Court's resolution of the claims asserted in the *Petition*.

5

In the Sixth Circuit, a court must undertake a four-part analysis to determine whether procedural default is a bar to a habeas petitioner's claims. *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); *see also Scuba v. Brigano*, 259 F. App'x. 713, 718 (6th Cir. 2007) (following the four-part analysis of *Maupin*). Specifically, the United States Court of Appeals for the Sixth Circuit requires the district courts to engage in the following inquiry:

First, the court must determine that there is a state procedural rule applicable to the petitioner's claim and that the petitioner failed to comply with the rule. Second, the court must determine whether the state courts actually enforced the state procedural sanction. Third, the court must determine whether the state procedural forfeiture is an adequate and independent state ground on which the state can rely to foreclose review of a federal constitutional claim. *Maupin*, 785 F.2d at 138. Finally, if "the court determines that a state procedural rule was not complied with and that the rule [has] an adequate and independent state ground, then the petitioner" may still obtain review of his or her claims on the merits if the petitioner establishes: (1) a substantial reason to excuse the default and (2) that he was actually prejudiced by the alleged constitutional error. *Id*. "Cause," under this test, "must be something external to the petitioner, something that cannot fairly be attributed to him[;] . . . some factor external to the defense [that] impeded [ ] efforts to comply with the State's procedural rule." *Coleman*, 501 U.S. at 753. This "cause and prejudice" analysis applies not only to a failure to raise or preserve issues for review at the appellate level but also to a failure to appeal entirely. *Id.* at 750.

However, "'[i]n appropriate cases' the principles of comity and finality that inform the concepts of cause and prejudice 'must yield to the imperative of correcting a fundamentally unjust incarceration.'" *Murray*, 477 U.S. at 495 (quoting *Engle v. Isacc*, 456 U.S. 107, 135 (1982)). A petitioner who fails to show cause and prejudice for his procedural default may

6

nonetheless obtain review of his claims if he can demonstrate that a court's refusal to consider a claim would result in a "fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750; *see also Lott v. Coyle,* 261 F.3d 594, 601–02 (6th Cir.2001) (same). The fundamental miscarriage of justice exception requires a showing that "in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Schlup v. Delo,* 513 U.S. 298, 329 (1995).

In claim one, Petitioner alleges that the prosecutor, on voir dire, improperly "attempted to get agreement from jurors as to specific actions concerning the facts of the case."[2] *Petition,* PageID# 5.) Although Petitioner raised this claim on direct appeal, the state appellate court reviewed it for plain error only because of Petitioner's failure to raise this issue in an objection at trial:

> [A]ppellant contends that the trial court erred in permitting improper questioning during voir dire. Specifically, appellant takes issue with a line of questioning in which the state asked potential jurors about their personal history with automobile accidents. Appellant argues that the questions were an attempt to "pre-try the case" and to "indoctrinate the jury," thus violating his right to trial by a fair and impartial jury.
>
> Crim.R. 24(B) governs voir dire. The rule states:
>
> Any person called as a prospective juror for the trial of any cause shall be examined under oath or upon affirmation as to the prospective juror's qualifications. The court may permit the attorney for defendant, or the defendant if appearing pro se, and the attorney for the state to conduct the examination of the prospective jurors or may itself conduct the examination. * * *.
>
> "The control of voir dire is a matter of the court's discretion. The manner of the questioning and the form of the questions are matters subject to the judgment of the court in the exercise of its sound discretion." (Citations omitted.) *State v. Lechner*, 4th Dist.

---

[2] Petitioner complains that the prosecutor repeatedly asked jurors whether they had ever hit something while driving, if they knew that they hit something, and whether they had ever driven away after an accident. ECF 1-2, PageID# 20.

No. 724, 1990 WL 252981, * 1 (Dec. 21, 1990); *See also State v. LaMar*, 95 Ohio St.3d 181, 2002–Ohio–2128, 767 N.E.2d 166, ¶ 40. A trial court does not abuse its discretion unless it acts arbitrarily, unreasonably, or unconscionably. *Lechner* at * 1; *LaMar* at ¶ 40.

Initially, we note that trial counsel for appellant failed to object to the questions posed by the prosecutor. Failure to object constitutes waiver of any challenges on appeal except for plain error. *State v. Garvin*, 197 Ohio App.3d 453, 2011–Ohio–6617, 967 N.E.2d 1277, ¶ 51 (4th Dist.). Thus, we review this assignment of error for plain error, rather than under an abuse of discretion standard.

Pursuant to Crim.R. 52(B), we may notice plain errors or defects affecting substantial rights. "Inherent in the rule are three limits placed on reviewing courts for correcting plain error." *State v. Payne,* 114 Ohio St.3d 502, 2007–Ohio–4642, 873 N.E.2d 306, ¶ 15. " 'First, there must be an error, *i.e.*, a deviation from the legal rule. * * * Second, the error must be plain. To be 'plain' within the meaning of Crim.R. 52(B), an error must be an 'obvious' defect in the trial proceedings. * * * Third, the error must have affected 'substantial rights.' We have interpreted this aspect of the rule to mean that the trial court's error must have affected the outcome of the trial. '"*Id*. at ¶ 16, 873 N.E.2d 306, quoting *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002). We will notice plain error "only to prevent a manifest miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus. "Reversal is warranted only if the outcome of the trial clearly would have been different absent the error." *State v. Hill*, 92 Ohio St.3d 191, 203, 749 N.E.2d 274 (2001).

We find no plain error warranting reversal in this case. During voir dire, a trial court should allow reasonable inquiry on any relevant matter which is determinative of the issues of the case. *State v. Gaines*, 8th Dist. No. 91179, 2009–Ohio–622, ¶ 71; *State v. Atalla*, 157 Ohio App.3d 698, 2004–Ohio–3414, 813 N.E.2d 84, ¶ 13 (9th Dist.); *Dayton v. Meyer*, 2nd Dist. No. 11848, 1991 WL 47533, *3 (Mar. 29, 1991). Moreover, voir dire examination is an essential process which allows litigants to determine whether a venireman is prejudiced or biased against either litigant. *Vega v. Evans*, 128 Ohio St. 535, 191 N.E. 757 (1934), paragraph one of the syllabus; *Krupp v. Poor*, 24 Ohio St.2d 123, 125, 265 N.E.2d 268 (1970); *Lloyd v. Willis*, 4th Dist. No. 03CA21, 2004–Ohio–427, ¶ 11. In order to ensure such a result, counsel is afforded reasonable latitude on the voir dire examination. *Krupp* at 126, 265 N.E.2d 268.

8

> A potential juror's experience with an automobile collision or accident would obviously be relevant to the issues of the instant case. Furthermore, the questions were aimed at determining whether a potential juror might be prejudiced or biased, either in favor of or against the state's case. Finally, the form and scope of the questions at issue were done in good faith, not in a manner to create bias, prejudice, or an unfair attitude towards appellant. Most importantly, the questions certainly did not change the outcome of appellant's trial. Accordingly, appellant's first assignment of error is without merit.

*State v. Black*, 2013 WL 2295697, at *3-4.

> [A]ppellant takes issue with the questions concerning the veniremen's history with automobile accidents. As mentioned above, because appellant did not raise an objection to these questions at trial, we review them for plain error. *Garvin,* 197 Ohio App.3d 453, 2011–Ohio–6617, 967 N.E.2d 1277, at ¶ 51; *see also State v. Keeley*, 4th Dist. No. 11CA5, 2012–Ohio–3564, ¶ 28. "Prosecutorial misconduct rises to plain error only if it is clear that a defendant would not have been convicted in the absence of the improper comments." *Keeley* at ¶ 28; citing *State v. Conley*, 4th Dist. No. 08CA784, 2009–Ohio–1848, ¶ 27.
>
> Again, we find that the form and manner of the questions did not create bias, prejudice, or an unfair attitude towards appellant; or otherwise lead to a biased panel of jurors. Put another way, we cannot say that appellant would not have been convicted in the absence of the prosecutor's questions concerning the veniremen's personal history of automobile collisions and accidents. As a result, the state's questions during voir dire do not amount to plain error.

*Id.* at *5-6.

The United States Court of Appeals for the Sixth Circuit has held that plain error review does not amount to a waiver of the state's procedural default rules. *Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000). As explained by the United States District Court for the Northern District of Ohio in *Adams v. Bradshaw*, 484 F.Supp.2d 753, 771 (N.D.Ohio 2007):

> Ohio has a contemporaneous objection rule under which an appellant who fails to object waives later review of the issue unless

9

> plain error can be shown. *Williams v. Bagley,* 380 F.3d 932, 968 (6th Cir.2004), *cert. denied*, 544 U.S. 1003, 125 S.Ct. 1939, 161 L.Ed.2d 779 (2005) (citing *State v. Smith*, 89 Ohio St.3d 323, 332, 731 N.E.2d 645 (2000)). The Sixth Circuit has held that Ohio's contemporaneous objection rule constitutes an adequate and independent state ground barring federal review absent a showing of cause for the waiver and resulting prejudice. *Id.; Hinkle v. Randle,* 271 F.3d 239, 244 (6th Cir.2001); *Stojetz v. Ishee*, 2006 WL 328155 *12 (S.D. Ohio Feb.10, 2006).
>
> A state court's review of an issue for plain error is considered by the Sixth Circuit as the enforcement of a procedural default. *Williams*, 380 F.3d at 968; *Hinkle,* 271 F.3d at 244. The federal court, in determining whether a state court has relied on a procedural rule to bar review of an issue, examines the latest reasoned opinion of the state courts and presumes that later courts enforced the bar instead of rejecting the claim on the merits. *Hinkle*, 271 F.3d at 244 (citing *Ylst, v. Nunnemaker*, 501 U.S. 797, 803, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991)).

*Id*. Because Petitioner did not raise this issue before the trial court, this Court concludes that petitioner has waived the right to present his claim regarding improper questions during *voir dire* in these habeas corpus proceedings.

Petitioner may still secure review of this claim on the merits if he demonstrates cause for his failure to follow the state procedural rules, as well as actual prejudice from the constitutional violation. *See Maples v. Stegall,* 340 F.3d 433, 438 (6th Cir. 2003). The constitutionally ineffective assistance of counsel may constitute cause for a procedural default. *Edwards v. Carpenter*, 529 U.S. at 451 (citing *Murray*, 477 U.S. at 488–89). Petitioner raises a claim of ineffective assistance of counsel in his second claim for relief before this Court.

Petitioner seeks habeas relief under 28 U.S.C. § 2254. The Antiterrorism and Effective Death Penalty Act ("AEDPA") sets forth standards governing this Court's review of state-court determinations. The United State Supreme Court recently described AEDPA as "a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court"

and emphasized that courts must not "lightly conclude that a State's criminal justice system has experienced the 'extreme malfunction' for which federal habeas relief is the remedy." *Burt v. Titlow*, -- U.S. --, --, 134 S.Ct. 10, 16 (2013) (quoting *Harrington v. Richter*, 562 U.S. 86 (2011)); *see also Renico v. Lett*, 559 U.S. 766, 773 (2010) ("AEDPA . . . imposes a highly deferential standard for evaluating state-court rulings, and demands that state court decisions be given the benefit of the doubt." (internal quotation marks, citations, and footnote omitted)).

The factual findings of the state appellate court are presumed to be correct:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(e)(1). "Under AEDPA, a writ of habeas corpus should be denied unless the state court decision was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court, or based on an unreasonable determination of the facts in light of the evidence presented to the state courts." *Coley v. Bagley*, 706 F.3d 741, 748 (6th Cir. 2013) (citing *Slagle v. Bagley,* 457 F.3d 501, 513 (6th Cir. 2006)); 28 U.S.C. § 2254(d)(1) (a petitioner must show that the state court's decision was "contrary to, or involved an unreasonable application of, clearly established federal law"); 28 U.S.C. § 2254(d)(2) (a petitioner must show that the state court relied on an "unreasonable determination of the facts in light of the evidence presented in the State court proceeding"). The United States Court of Appeals for the Sixth Circuit recently explained these standards as follows:

> A state court's decision is "contrary to" Supreme Court precedent if (1) "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law[,]" or (2) "the state court confronts facts that are materially indistinguishable

11

> from a relevant Supreme Court precedent and arrives" at a different result. *Williams v. Taylor*, 529 U.S. 362, 405, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). A state court's decision is an "unreasonable application" under 28 U.S.C. § 2254(d)(1) if it "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular ... case" or either unreasonably extends or unreasonably refuses to extend a legal principle from Supreme Court precedent to a new context. *Id*. at 407, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389.

*Coley,* 706 F.3d at 748–49. The burden of satisfying the standards of § 2254 rests with the petitioner. *Cullen v. Pinholster*, 563 U.S.170, 181 (2011).

"In order for a federal court to find a state court's application of [Supreme Court precedent] unreasonable, . . . [t]he state court's application must have been objectively unreasonable," not merely "incorrect or erroneous." *Wiggins v. Smith,* 539 U.S. 510, 520–21, (2003) (internal quotation marks omitted) (citing *Williams v. Taylor*, 529. U.S. at 409 and *Lockyer v. Andrade*, 538 U.S. 63, 76 (2003)); *see also Harrington v. Richter*, 131 S.Ct. at 786 ("A state court's determination that a claim lacks merit precludes federal habeas relief so long as "'fairminded jurists could disagree' on the correctness of the state court's decision." (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). In considering a claim of "unreasonable application" under § 2254(d)(1), courts must focus on the reasonableness of the result, not on the reasonableness of the state court's analysis. *Holder v. Palmer*, 588 F.3d 328, 341 (6th Cir.2009) ("'[O]ur focus on the 'unreasonable application' test under Section 2254(d) should be on the ultimate legal conclusion that the state court reached and not whether the state court considered and discussed every angle of the evidence.'" (quoting *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002) (*en banc*))); *see also Nicely v. Mills*, 521 F. App'x 398, 403 (6th Cir. 2013) (considering evidence in the state court record that was "not expressly considered by the state

court in its opinion" to evaluate the reasonableness of state court's decision). Relatedly, in evaluating the reasonableness of a state court's ultimate legal conclusion under § 2254(d)(1), a court must review the state court's decision based solely on the record that was before it at the time it rendered its decision. *Pinholster*, 563 U.S. at 181. Put simply, "review under § 2254(d)(1) focuses on what a state court knew and did." *Id*. at 182.

**Ineffective assistance of counsel**

The state appellate court rejected Petitioner's claim of the denial of the effective assistance of counsel as follows:

> [A]ppellant asserts that his trial counsel failed to provide effective assistance of counsel.
>
> Criminal defendants have a right to counsel, including a right to the effective assistance from counsel. *See McMann v. Richardson*, 397 U.S. 759, 771, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970), fn. 14; *State v. Stout*, 4th Dist. No. 07CA5, 2008–Ohio–1366, ¶ 21. To establish constitutionally ineffective assistance of counsel, a defendant must show (1) that his counsel's performance was deficient and (2) that the deficient performance prejudiced the defense and deprived him of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *see also State v. Issa*, 93 Ohio St.3d 49, 67, 752 N.E.2d 904 (2001); *State v. Goff*, 82 Ohio St.3d 123, 139, 694 N.E.2d 916 (1998). "In order to show deficient performance, the defendant must prove that counsel's performance fell below an objective level of reasonable representation. To show prejudice, the defendant must show a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." (Citations omitted.) *State v. Conway*, 109 Ohio St.3d 412, 2006–Ohio–2815, 848 N.E.2d 810, ¶ 95. "Failure to establish either element is fatal to the claim." *State v. Jones*, 4th Dist. No. 06CA3116, 2008–Ohio–968, ¶ 14. Therefore, if one element is dispositive, a court need not analyze both. *See State v. Madrigal*, 87 Ohio St.3d 378, 389, 721 N.E.2d 52 (2000) (stating that a defendant's failure to satisfy one of the elements "negates a court's need to consider the other.").
>
> Appellant claims that his trial counsel was ineffective because his counsel failed to object to the state's questions during voir dire. Appellant calls the questions "blatantly improper" and argues that

> not only should objections have been raised, but that his counsel should have made a motion for a mistrial.
>
> We have already determined in our analysis of appellant's first and second assignments of error, however, that the state's questions during voir dire were not improper. Rather, the questions were relevant to the issues of the case and were intended to determine whether the potential jurors could act fairly and impartially. Since the questions were not improper, the failure to object cannot constitute ineffective assistance of counsel. *See State v. Jackson*, 4th Dist. No. 11 CA20, 2012–Ohio–6276, ¶ 34 (holding that since the alleged prosecutorial misconduct did not in fact occur, the failure to object cannot constitute ineffective assistance of counsel); *see also State v. Witherspoon*, 8th Dist. No. 94475, 2011–Ohio–704, ¶ 33 ("[T]he failure to do a futile act cannot be the basis for claims of ineffective assistance of counsel and is not prejudicial."). Accordingly, appellant has not shown that his trial counsel's failure to object to the questions at voir dire constituted ineffective assistance of counsel that requires reversal.

*State v. Black*, 2013 WL 2295697, at *6.

"In all criminal prosecutions," the Sixth Amendment affords "the accused . . . the right . . . to Assistance of Counsel for his defence." U.S. Const. amend. VI. "Only a right to 'effective assistance of counsel' serves the guarantee." *Couch v. Booker*, 632 F.3d 241, 245 (6th Cir. 2011) (citation omitted). The United States Supreme Court set forth the legal principals governing claims of ineffective assistance of counsel in *Strickland v. Washington*, 466 U.S. 556 (1984). *Strickland* requires a petitioner claiming ineffective assistance of counsel to demonstrate that his counsel's performance was deficient and that he suffered prejudice as a result. 466 U.S. at 687; *Hale v. Davis,* 512 F. App'x 516, 520 (6th Cir. 2013). A petitioner "show[s] deficient performance by counsel by demonstrating 'that counsel's representation fell below an objective standard of reasonableness.'" *Poole v. MacLaren*, No. 12–1705, -- F. App'x --, 2013 WL 6284355, at *5 (6th Cir. Dec.5, 2013) (quoting *Davis v. Lafler*, 658 F.3d 525, 536 (6th Cir. 2011), and citing *Strickland,* 466 U.S. at 687). To make such a showing, a petitioner "must

overcome the 'strong [ ] presum[ption]' that his counsel 'rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *Poole*, 2013 WL 6284355 at *5 (quoting *Strickland*, 466 U.S. at 687). "To avoid the warping effects of hindsight, [courts must] 'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Bigelow v. Haviland*, 576 F.3d 284, 287 (6th Cir.2009) (quoting *Strickland,* 466 U.S. at 689). Petitioner has failed to meet this standard.

The state appellate court determined that the prosecutor's questions fell within permissible bounds under Ohio law. Further, a trial judge is granted broad discretion in conducting *voir dire. Jamison v. Collins*, 100 F.Supp.2d 647, 700 (S.D. Ohio 2000)(citing Hill, 199 F.3d at 843 (citing *Mu'Min v. Virginia*, 500 U.S. 415, 424 (1991); *Ham v. South Carolina*, 409 U.S. 524, 528 (1973)). "The burden of showing that 'a juror was unable to set aside any preconceived notions or opinions and render a verdict based solely upon the evidence presented in court' rests with Petitioner. *Id*. (quoting *Hammer v. Bowlen*, 934 F.Supp. 911, 916 (M.D.Tenn.1996)(internal citation omitted). Petitioner has not met this burden here. Moreover, he has referred to, and this Court is aware of, no federal cases holding that a prosecutor is prohibited during *voir dire* from inquiring of potential jurors regarding their experiences with facts similar to those involved in a case. To the contrary, this type of questioning would be relevant to determining whether any potential juror may hold preconceived notions or potential biases.

In short, this Court concludes that Petitioner has failed to establish the ineffective assistance of counsel under the two-prong *Strickland* test.

**Recommended Disposition**

Therefore, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED.**

**Procedure on Objections**

If any party objects to this *Report and Recommendation*, that party may, within fourteen (14) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

    *s/ Norah McCann King*
Norah McCann King
United States Magistrate Judge
November 24, 2015